Albert FRANCINI

v.

TOWN OF FARMINGTON, Ruth Ann Baird, E. Cody Cartnick, Robert W. Johansen, Jr., and Ray S. Cragin.

Civ. A. No. H 81–95.

United States District Court, D. Connecticut.

Dec. 23, 1982.

---

Allen J. Segal, Plainville, Conn., for plaintiff.

James J. Tancredi and Palmer S. McGee, Jr., Day, Berry & Howard, Hartford, Conn., for defendants.

## AMENDED RULING ON PENDING MOTIONS [1]

JOSÉ A. CABRANES, District Judge:

In this action, brought pursuant to 42 U.S.C. § 1983, plaintiff Albert Francini challenges the denial by the Planning and Zoning Commission of the Town of Farmington (the "Commission") of his application to subdivide a parcel of land in which he had an interest.

### I.

The undisputed facts in this case can be quickly sketched. Sometime in 1979, Albert Francini, a real-estate developer, entered into a contract to purchase a parcel of land in the Town of Farmington. Completion of the contract was conditioned on approval by the Commission of Francini's application to subdivide the land into four lots. On November 30, 1979, Francini made his applica-

---

1. This court originally filed its Rulings on Pending Motions in this case on November 12, 1982. On December 2, 1982, plaintiff filed a Motion for Relief from Rulings on Pending Motions, which was denied on December 10, 1982. To correct any confusion that may have ensued, the court is today filing this Amended Ruling on Pending Motions.

tion to the Commission for approval of his subdivision plan and for permission for a "regulated wetlands activity."[2] The Commission is authorized to pass upon such applications, having been created pursuant to C.G.S. § 8–19, in accordance with the procedures applicable to approval of subdivision applications under C.G.S. § 8–25. Public hearings on Francini's applications were held on January 14, 1980 and February 11, 1980. On March 10, 1980 the Commission denied Francini's applications.

Thereafter, the original owner of the land in question sold it to an entity called Libron, Inc. ("Libron"), of which Francini himself was one-half owner. Libron filed its own applications for approval of a subdivision plan that called for ten lots, permission for a regulated wetlands activity, and removal of the land from wetlands classification. Libron's application was filed on July 15, 1980, and a public hearing was held on September 8, 1980. On October 14, 1980 the Commission granted Libron's application.[3]

Francini appealed the Commission's denial of his application to the Connecticut Superior Court for the Judicial District of Hartford-New Britain, *Francini v. Planning and Zoning Commission*, CV 80–0402914S; his appeal was dismissed as moot, because of the expiration of his interest in the property during the pendency of the action. Thereafter, he brought this action against the Town of Farmington and the individual members of the Commission, claiming that he had been denied due process of law and equal protection of the laws; although it has never been specified as a separate claim, it also appears that Francini claims that property was taken from him without just compensation. All of those claims allege violations of the Fourteenth Amendment of the United States Constitution.

There is now before the court Francini's Amended Complaint (filed Feb. 9, 1982), against which the defendants have launched a twofold attack. As to Francini's claims that he was deprived of property without due process of law and without just compensation, the defendants have filed a motion to dismiss that portion of the complaint, pursuant to Rule 12(b)(6), Fed.R. Civ.P., for failure to state a claim upon which relief can be granted. Defendant's Motion to Dismiss Plaintiff's Amended Complaint (filed May 21, 1982). As to Francini's claim that he was denied equal protection of the laws, the defendants have filed a motion for summary judgment in their favor, pursuant to Rule 56(b), Fed.R. Civ.P. Defendants' Supplemental Motion for Summary Judgment (filed May 25, 1982).

## II.

The frustrated applicant for subdivision approval is fast becoming a familiar figure in this court. In *Deutsch v. Yudkin,* Civ. No. N 79–14 (D.Conn. Jan. 8, 1981) (Daly, J.), Deutsch had been denied approval of her zoning application by the planning and zoning commission of the town of Woodbridge. She appealed that denial to the Connecticut courts and won an order directing the town to approve her application. She then sued in federal court, claiming that the initial disapproval of her subdivision application violated certain of the rights secured to her by the United States Constitution. One of her arguments was that she had a state law property right to obtain approval of her application and that in denying her application the defendant commission had deprived her of that right without due process of law. Judge Daly rejected that argument, holding that

---

**2.** Under C.G.S. § 22a–40 certain activities may be conducted, pursuant to permit, within a wetlands area. Under C.G.S. § 22a–42, a municipality may regulate, through issuance of permits, permitted wetlands activity, pursuant to hearing and determination by commission.

**3.** A developer seeking a previously unpermitted use of land designated as a wetlands area has

two recourses under Chapter 440, C.G.S. The developer may seek amendment or change of the wetlands boundaries, under C.G.S. § 22a–42a(a), or (as Francini here did) seek permission for a regulated purpose, under C.G.S. § 22a–40, from the municipal commission, acting pursuant to C.G.S. § 22a–42.

Deutsch could not have acquired a property interest in the subdivision permits at issue until the commission's function had been reduced to a ministerial one. As long as the commission had discretion to determine whether applicable regulations had been satisfied by the proposed subdivision plan, Deutsch's property interest, if any, did not amount to one deserving constitutional protection and thus cognizable under § 1983.

*Adams v. Town of Bethlehem,* Civ. No. H 80–544 (D.Conn., Feb. 22, 1982) (oral ruling) (Cabranes, J.), *aff'd without op.,* 697 F.2d 287 (2d Cir.1982), presented a similar situation. In *Adams* the plaintiff argued that the act of the planning commission in approving his application for a subdivision was purely ministerial, and that therefore his interest in that approval rose to the level of constitutional protection. Adams had appealed the denial of his application to a Connecticut court, which court had found the commission's denial of Adams's application to be arbitrary, illegal, and an abuse of discretion. The federal court concluded that if the state court had found that the commission had abused its discretion, it followed that there was some discretion in the commission's function. Accordingly, the federal court held that the commission's act was not purely ministerial and that Adams's interest was not a constitutionally protected one.

In *Viking Construction Co. v. Thorne,* Civ. No. H 80–250 (D.Conn., April 15, 1982) (Clarie, C.J.), the plaintiff had submitted a subdivision application to the planning commission of the town of Simsbury. The commission failed to act on the application for sixty-five days, after which the plaintiff, pursuant to C.G.S. § 8–26, sought issuance of a certificate of approval from the commissioners. Instead, the commission promptly disapproved the application. The plaintiff appealed, and the Connecticut Supreme Court eventually held that the planning commission lacked discretion to determine when the statutory sixty-five day period of C.G.S. § 8–26 began to run. The plaintiff then filed suit in federal court, alleging that its constitutional rights had been violated. Chief Judge Clarie, how-

ever, held that the plaintiff's interest in the subdivision approval remained a mere expectancy until the Supreme Court acted. Before that event, there being no settled law on point, the plaintiff could have had at most a hope that its application would be granted.

The constitutional context within which *Deutsch, Adams,* and *Viking Construction Co.* were decided is elucidated in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

"[T]he range of interests protected by procedural due process is not infinite," *id.* at 570, 92 S.Ct. at 2705; such interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. at 2709. *See Paul v. Davis,* 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

In claiming that he was deprived of property without due process of law, Francini seeks to distinguish his case from *Deutsch, Adams,* and *Viking Construction Co.*—while admitting, with admirable candor, that this is an "unenviable task." Plaintiff's Memorandum in Opposition of [sic] the Defendants' Motion to Dismiss Plaintiff's Amended Complaint (filed June 28, 1982) ("Plaintiff's Opposition to Dismissal") at 3. Plaintiff argues that *Deutsch* and *Adams* turned on the judicial finding that the planning commission in question enjoyed some discretion in deciding whether to grant the particular plaintiff's subdivision application. In the instant case, however, Francini alleges that the planning commission had no discretion. Plaintiff's Opposition to Dismissal at 4. The Commission, according to Francini, lacked discretion, because the plaintiff "met

all of the criteria required of him for the approval of the subdivision as provided in the Statutes, rules and regulations." Amended Complaint at 3. For the background of this allegation, see Transcript of Oral Argument and Ruling, *Francini v. Town of Farmington,* Civ. No. H 81–95 (D.Conn., Jan. 29, 1982) ("Tr.") at 29–30.

### III.

█ It is, of course, axiomatic that in considering a motion to dismiss, the well-pleaded and material factual allegations of the complaint are taken as admitted, though conclusions of law may be disregarded by the court. 2A Moore's Federal Practice ¶ 12.08 (1982). *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Hence, this court takes as admitted the allegation that Francini's subdivision plan met the criteria necessary for approval by the Commission. Nonetheless, the court concludes plaintiff's claim of deprivation of property without due process of law must be dismissed for failure to state a claim upon which relief can be granted.

The Amended Complaint contains the following statements:

Nevertheless, even though the plaintiff, *the equitable owner of the land,* had met all of the criteria, the Defendants denied his application thereby extinguishing his property rights to the subdivision and the land.

\*　　\*　　\*　　\*　　\*　　\*

The Plaintiff had an interest in this 4 lot subdivision as a result of a contract to purchase from the landowner which was conditioned upon subdivision approval of the planning and zoning commission, the named Defendants. As a result of its denial the owner of the land sold the property to a corporation named Libron, Inc.

Amended Complaint, ¶¶ 11, 13 at 3.

█ Whether plaintiff was in fact equitable owner of the land in question is, however, a conclusion of law, and the court owes plaintiff's mere allegation no deference on this point. "An equitable title is a right possessed by a person to have the legal title to property transferred to him upon the performance of specified conditions." *Citizens National Bank of Kirksville, Missouri v. Commissioner,* 122 F.2d 1011, 1014 (8th Cir.1941), *cert. denied,* 315 U.S. 822, 62 S.Ct. 913, 86 L.Ed. 1219 (1942); *Motels of Maryland, Inc. v. Baltimore County,* 244 Md. 306, 223 A.2d 609 (1966). The right must be one enforceable in equity. *United States v. Davidson,* 139 F.2d 908, 910 (5th Cir.1943). In other words, before one can claim equitable title, one must be in a position such that a court of equity could, in exercising its jurisdiction over the parties, convey legal title. *See* 30 C.J.S. Equity § 60, n. 30 at 901 (collecting cases). In the case at bar, Francini never held equitable title as against the prior landowner, because no court of equity, taking jurisdiction of a controversy between Francini and the landowner, could have transferred title to Francini. Legal title would have passed to Francini only upon performance of specific conditions by persons not parties to the contract for sale. Thus, Francini was without equitable title. Francini's interest in the land never amounted to more than an expectation, *Board of Regents v. Roth, supra,* 408 U.S. at 569, 578, 92 S.Ct. at 2705, 2709–2710, and hence, when he was deprived of that interest, the Fourteenth Amendment did not require that he be accorded any process at all. *Id.*

█ Our concern with equitable title is no semantic quibble. The contingency of Francini's interest in the Farmington property explains why he now argues that he— unlike the *Deutsch, Adams,* and *Viking Construction Co.* plaintiffs—was unable to appeal the denial of his subdivision application by the planning commission. Once his application was denied, he claims, his rights under the contract of sale apparently terminated, thereby eliminating his route of appeal.[4] Thus, this court is now the first to

---

4.　*See, e.g., Francini v. Town of Farmington,* Tr.　at 24–25.

be asked to pass upon the conduct of the Commission in disapproving Francini's application. It is brought perilously close to the role that federal courts, in the absence of allegations of manifest irrationality, have always striven to avoid: that of a "superlegislature" or "zoning board of appeals." *See Construction Industry Association of Sonoma County v. City of Petaluma,* 522 F.2d 897, 906 (9th Cir.1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976); *Steel Hill Development, Inc. v. Town of Sanbornton,* 469 F.2d 956, 960 (1st Cir.1972); *Diedrich v. Zoning Commission of District of Columbia,* 393 F.2d 666 (D.C. Cir.1966). This danger arises precisely from the fact that Francini's interest in the property was too fragile to support jurisdiction in state court. Francini has offered no reason why that fact ought then to be used to ground federal jurisdiction.

In arguing that he was denied due process, Francini challenges the propriety of the structure of appeal of planning commission decisions provided by the State of Connecticut. "Before a governmental body may deprive a landowner of a property interest, it must provide due process. The exact process required varies with the demands of the particular situation in question." *Rogin v. Bensalem Township,* 616 F.2d 680, 694 (3d Cir.1980). "Due process is flexible and calls for such procedural protection as the particular situation demands." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Appellate review was foreclosed in Francini's case only because of the contractual provisions that he chose to endorse. Where a plaintiff elects to forego a commercial opportunity, and one foreseeable consequence of that election is a loss of standing to pursue a particular claim, the result can hardly be said to be a deprivation of constitutionally requisite due process.

The issue is not one of exhaustion of state remedies, as plaintiff assumes, Plaintiff's Opposition to Dismissal at 6. Plaintiff's appeal may well have been sufficient to constitute exhaustion of state remedies.

The difficulty with plaintiff's action is not that it was not pressed in state court; rather, the difficulty is, that for a variety of reasons (some of them similar to those that caused its failure in state court) it must also fail in federal court. It can hardly be said that Francini's lack of standing to bring his claim in state court *confers* standing upon him to bring his claim in federal court.

Even assuming *arguendo* that Francini could be shown to be the "equitable owner" of the Farmington parcel, this court would be compelled to reach the same conclusion. Francini's claim that the Commission's action was ministerial rests upon a shaky foundation in the case law of the state. In support of the proposition that a planning commission lacks any discretion in considering a subdivision application, plaintiff cites only *R.K. Development Corp. v. City of Norwalk,* 156 Conn. 369, 242 A.2d 781 (1968); *see* Plaintiff's Opposition to Dismissal at 4. Yet *R.K. Development Corp.* may not stand for the proposition for which it is cited. It is true that in that decision, the Connecticut Supreme Court stated that "[i]f the plan submitted conforms to [the] regulations, the [commission] has no discretion or choice but to approve it." *Id.* at 375–376, 242 A.2d 781. However, the court went on to elaborate its holding in a succeeding paragraph:

> The [commission] cannot, in utter disregard of the regulations, disapprove the plan for a reason it would not be required to apply to all applications for planned residential developments as to which the same reason obtained. It would amount to substitution of the *pure discretion* of the [commission] for a discretion controlled by fixed standards applying to all cases of a like nature.

*Id.* at 377, 242 A.2d 781 (emphasis supplied). If *R.K. Development Corp.* means only that the commission is not vested with unlimited or "pure" discretion, then, of course, it does not necessarily follow that the commission is bound to an utterly ministerial function. It may be that, as to some aspects of its procedures, the commission is without discretion, but *R.K. Development Corp.* no-

where suggests that a planning commission considering an application for a subdivision is bereft of discretion as to every aspect of its activity. In any event, *R.K. Development Corp.* is but a single case in a long series of decisions. *See* Silverman, *Subdivision, Connecticut Style—An Orwellian Philosophy?*, 46 Conn.Bar J. 571 (December 1972). Thus, *R.K. Development Corp.* itself neither accorded Francini a right to subdivision approval nor gave him anything more than a hope or "expectation," *Viking Construction Co., supra*, at 8, that (assuming his application met the relevant criteria) the action of the commission would be merely ministerial.

For all of the above reasons, the defendants' motion to dismiss the Amended Complaint, insofar as it states claims pursuant to an allegation of denial of due process, must be granted.

## IV.

To whatever extent, if any, Francini has alleged a claim of taking without just compensation, see Plaintiff's Opposition to Dismissal at 5–7, it is to be supposed that that claim too is subject to the defendants' motion to dismiss, *see* Defendants' Memorandum in Support of Motion to Dismiss (filed May 21, 1982) at 4–9.

■ Courts have consistently held that, in order to state a claim that a taking without just compensation has occurred, a plaintiff must allege destruction or severe diminution of the value of property. *Rogin v. Bensalem Township, supra,* 616 F.2d at 690. *Cf. United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945). In the instant case Francini has alleged only that the denial of his subdivision application caused him the loss of "substantial sums of money for his property rights in the land, engineering and expert costs to prepare the land for subdivision and legal and other fees to advocate his position before the Defendants acting on behalf of the Defendant, Town of Farmington." Amended Complaint, ¶ 12 at 3. However, it is well-settled that a constitutionally cognizable "taking" requires the sovereign to pay

for what it actually gains, not for what the plaintiff has lost. The mere loss of a commercial opportunity—which is all that Francini's "property rights" amounted to— does not constitute a taking. *United States ex rel. Tennessee Valley Authority v. Powelson,* 319 U.S. 266, 281–282, 63 S.Ct. 1047, 1055–1056, 87 L.Ed. 1390 (1943). ("[N]ot all losses suffered by the owner are compensable under the Fifth Amendment. In absence of a statutory mandate . . . the sovereign must pay only for what it takes, not for opportunities which the owner may lose.") The various other costs mentioned by the plaintiff are but incidental or consequential losses, and thus were not "taken" by the Town of Farmington within the meaning of the Constitution. *R.J. Widen Co. v. United States,* 357 F.2d 988, 994 (Ct.Cl.1966). Accordingly, the court concludes that the defendants' motion to dismiss the Amended Complaint, insofar as it states claims pursuant to an allegation of a taking without compensation, must be granted.

## V.

■ We turn finally to plaintiff's claim that defendants denied him equal protection of the laws, which claim defendants have attacked by motion for summary judgment.

In his defense, plaintiff has filed Plaintiff's Memorandum in Opposition of [sic] Defendants' Supplemental Motion for Summary Judgment (filed June 28, 1982) ("Plaintiff's Opposition to Summary Judgment"). While that memorandum contains numerous allegations that the Commission "discriminated" in its denial of Francini's subdivision application, nowhere does the memorandum suggest that Francini was treated any differently than any other applicant for a subdivision. Indeed, plaintiff does not claim that the different results of Francini's November 1979 application and Libron's July 1980 application constitute the invidious discrimination underlying plaintiff's equal protection claim. Tr. at 10.

However, the guarantee of equal protection of the laws has been held not to create substantive rights, "but rather a right to be

free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). A claim of denial of equal protection may not be merely another way of stating what has already been put forward as a claim of denial of due process.

Analysis need go no further. Nonetheless, the court notes that, inasmuch as Francini has not alleged an infringement of any fundamental right nor use of a suspect classification, even action by the Commission having an invidiously discriminatory impact would not offend the Fourteenth Amendment so long as that action bore a reasonable relation to a legitimate state interest. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976).

Plaintiff concedes that in November 1979 he filed only an application for a subdivision approval, without seeking a change in the property's wetlands classification. *See* Deposition of Albert Francini (August 26, 1981) at 9; Plaintiff's Opposition to Summary Judgment at 4. In contrast, Libron sought such a classification change as well as approval of its subdivision application. *See* Plaintiff's Opposition to Summary Judgment at 4. On the basis of this conceded difference between the two proposals, the Commission could rationally have made an administrative distinction leading to different treatments of the Francini and Libron applications. Since Francini, in his November 1979 application, sought only approval of his subdivision plan, the Commission was bound to consider the plan as one for the use of property within the pre-existing wetlands classification. When Libron filed its application for subdivision approval, and at the same time sought a change in the property's wetlands classification, the Commission was free to consider the plan as one for the use of property within a different wetlands classification. Before this court could condemn the treatment accorded Francini as a violation of equal protection, therefore, the court would have to find that there is no rational basis nor any permissible social purpose for the different wetlands classifications possible under C.G.S. § 22a–42a(a). On the facts of this case, in which Francini has made no such contention, the court declines to make such a finding.

It cannot be said that the distinction made between Francini's and Libron's applications was irrational, nor that it furthered no reasonable governmental purpose. Equal protection has not been denied merely because a particular discrimination works a hardship on a given individual. *See, e.g., Slavin v. Secretary of Department of Health, Education and Welfare,* 486 F.Supp. 204, 207 (S.D.N.Y.1980).

Accordingly, defendants' motion for summary judgment must be granted.

## CONCLUSION

To summarize: defendants' motion to dismiss the Amended Complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P., insofar as the Amended Complaint states a claim of denial of due process, is granted; defendants' motion to dismiss the Amended Complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P., insofar as the Amended Complaint states a claim of a taking without just compensation, is granted; and defendants' motion for summary judgment in their favor, pursuant to Rule 56(b), Fed.R.Civ.P., insofar as the Amended Complaint states a claim of denial of equal protection of the laws, is granted.

It is so ordered.